**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:12-cv-02064-DME

CANDACE MCNEIL,

                    Plaintiff,

v.

WELLS FARGO BANK, N.A.,

                    Defendant.

---

### ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

---

Before the Court are Defendant Wells Fargo Bank, N.A.'s motion for summary judgment ("Motion"); Plaintiff Candace McNeil's response ("Response"); and Wells Fargo's reply ("Reply").  Docs. 26, 30, 40.  For the reasons that follow, the Court GRANTS Wells Fargo's Motion.

### BACKGROUND

Plaintiff Candace McNeil, an African-American, alleges that her former employer, Wells Fargo Bank, N.A. ("Wells Fargo"), discriminated and retaliated against her because of her race and disability status.  Ms. McNeil began her employment as a teller at Wells Fargo's downtown Denver branch in August 2006.  She remained employed at that branch until September 2008, when she took a leave of absence to undergo knee surgery.  After her doctor cleared her to return to work in May 2009, Ms. McNeil sought reinstatement to her pre-surgery position with Wells Fargo.  She informed the bank that her return to work was conditioned upon a number of doctor-ordered work restrictions, the most important of which was that she needed to sit for fifteen

minutes after every two hours of standing.  In response, Lorie Junnila, an Employee Relations

Consultant at Wells Fargo, put Ms. McNeil in touch with Mark Neider, who became Ms.

McNeil's contact at Wells Fargo's "Workability" group, which handles the bank's employee

accommodations.

      Ms. McNeil returned to Wells Fargo on July 27, 2009, as a teller in its Sable Boulevard-

branch in Aurora, Colorado.  Although Mr. Neider had earlier informed the Aurora-branch

managers of Ms. McNeil's work restrictions, the managers were reminded of those restrictions in

an early-August email from Ms. Junnila.  Shortly thereafter, Ms. McNeil provided Wells Fargo

with a new letter from her doctor which outlined her updated work restrictions, including that she

could no longer stand for more than one hour at a time and that she should be allowed to rest her

leg while seated.  Ms. McNeil contends that the discrimination began a few weeks later, in late

August 2009.  In particular, she points to a September 16, 2009 incident, where one of her

managers allegedly pulled the chair she was leaning on out from under her.  This caused Ms.

McNeil to develop lower back and knee-joint pain, and as a result, she missed an additional four

days of work in late September.  Although Ms. McNeil's doctor cleared her to return to work

under her existing restrictions, Ms. McNeil stated that she could only stand for half an hour

before needing to sit, rather than an hour.  For his part, Mr. Neider responded to the chair

incident by holding a call with Ms. Junnila and the Aurora-branch managers, who were

"coached" on abiding by Ms. McNeil's work restrictions and directed to allow her the flexibility

to sit or stand at work.  Mr. Neider relayed this conversation to Ms. McNeil on September 24,

2009, and that was the last time the two spoke.

On October 30, 2009, Wells Fargo issued Ms. McNeil an informal warning because her cash differences and out-of-balance conditions violated Wells Fargo's Cash Balancing and Operating Loss Policies' uniform guidelines ("Loss Policy Guidelines").  The informal warning alleged that Ms. McNeil's cash drawer was out of balance on 33 percent of the days she had worked in the previous month, which exceeded the Loss Policy Guidelines' 25 percent threshold, and that Ms. McNeil's rolling three-month cash shortages were $386.67, which exceeded the Loss Policy Guidelines' $200 threshold.  On November 20, 2009, Wells Fargo issued Ms. McNeil an informal warning addendum for her continued violation of Wells Fargo's Loss Policy Guidelines.  The addendum alleged that Ms. McNeil's cash drawer was out balance on 45 percent of the days she worked in October and short $356.52, bringing her three-month rolling cash shortages to $773.24 and far-exceeding the $200 threshold.  On January 25, 2010, Wells Fargo issued Ms. McNeil a formal warning because her cash differences for October through December 2009 again violated the Loss Policy Guidelines.  The formal warning alleged that in December alone, Ms. McNeil was out of balance on 38 percent of the days she had worked and was short another $735.50, for a total three-month rolling cash shortage of $1,241.26.  These figures matched the figures reported in Ms. McNeil's Employee Cash Difference Ledger ("GUS report"), which showed each date from October through December 2009 when Ms. McNeil's drawer was out of balance and by what dollar amount.

When Ms. McNeil's February 2010 cash differences and out-of-balance conditions were once again in violation of Wells Fargo's Loss Policy Guidelines, Service Manager Chrystal Gomez and Assistant Store Manager Josh Overton conferred with Ms. Junnila about whether to terminate Ms. McNeil's employment.  Ms. Junnila confirmed that termination would be proper

3

in light of Ms. McNeil's repeated violations of Wells Fargo's Loss Policy Guidelines, and on

March 17, 2010, Ms. McNeil was informed by Ms. Gomez and Mr. Overton that her

employment with Wells Fargo had been terminated.   That same day, Ms. McNeil reached out to

Ms. Junnila to inquire whether she was eligible for re-hire by Wells Fargo; Ms Junnila was

unavailable, but when she returned Ms. McNeil's call the following day, she informed Ms.

McNeil that although she was re-hireable, her termination had made her ineligible for another

position on the teller line.   Ms. McNeil did not complain of race, color, or disability

discrimination at any time during their conversation, but she asserts other vague and general

allegations that she did complain on unspecified occasions to unspecified people about race/color

or disability discrimination.   These allegations are too general to have any evidentiary value.

On January 10, 2011, Ms. McNeil filed a charge of discrimination with the Equal

Employment Opportunity Commission.   Upon receipt of her "Notice of Right to Sue," she timely

filed this action in the District Court of Arapahoe County, Colorado, alleging race and color

discrimination and retaliation, in violation of 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. §

1981 ("Section 1981"), and disability discrimination and retaliation, in violation of the

Americans With Disabilities Act ("ADA").   Ms. McNeil alleges that, as an African American

with a disability, she was treated less favorably than her Hispanic co-workers.   Relying on 28

U.S.C. § 1331, Wells Fargo properly removed the action to federal court.   Wells Fargo denies

discriminating or retaliating against Ms. McNeil, and now moves this Court for an order of

summary judgment on all of Ms. McNeil's claims.   Having found no genuine dispute as to any

material fact, the Court grants Wells Fargo's Motion in its entirety.

**DISCUSSION**

To obtain summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thomas v. Int'l Bus. Machs., 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The relevant inquiry, in other words, "is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Simpson v. Univ. of Colo. Boulder, 500 F.3d 1170, 1179 (10th Cir. 2007) (internal quotation marks omitted). Although this Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party," Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005), "[u]nsubstantiated allegations carry no probative weight," and "[t]o defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004).

**I.   Wells Fargo is entitled to Summary Judgment on Ms. McNeil's race-based discrimination and retaliation claims**

In her first set of claims, Ms. McNeil alleges that Wells Fargo discriminated and retaliated against her because of her race and skin color, in violation of both Title VII and Section 1981. She bases these allegations on her belief that she was treated as "a second class citizen" because she is African American and not Hispanic. Response at 10. As she sees it, "Wells Fargo['s] Hispanic management did not want an African American teller at the Sable

location, and they made her working conditions intolerable." Id. at 11.  In particular, she

contends that she was held to a higher performance standard than her Hispanic counterparts, that

she was disciplined for conduct that Hispanic employees were not disciplined for, and that she

was treated less favorably than Hispanic employees requiring accommodations.  While such

allegations, if supported, could conceivably give rise to viable discrimination claims, the

unsubstantiated and conclusory evidence offered by Ms. McNeil in support of her claims is

insufficient to survive summary judgment.  See Bones, 366 F.3d at 875.  For the reasons that

follow, therefore, Wells Fargo is entitled to summary judgment on each of Ms. McNeil's race-

based claims.[1]

       a.  Race-based Discrimination

To prevail on her discrimination claims, Ms. McNeil must establish that her race played a

part in Wells Fargo's decision to her terminate her employment.  She has the option of satisfying

that burden in one of two ways: either under the "mixed-motives" framework by directly

showing that discriminatory animus played a "motivating part" in her termination, see Price

Waterhouse v. Hopkins, 490 U.S. 228, 250 (1989), or under the "pretext" framework by

indirectly establishing discrimination by showing that Wells Fargo's proffered reason for her

termination was "pretextual," see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05

(1973).  Although the Tenth Circuit has "emphasize[d] that a plaintiff need not characterize her

case as a mixed-motive or pretext case from the outset," Fye v. Okla. Corp. Comm'n, 516 F.3d

1217, 1225 (10th Cir. 2008), Ms. McNeil has chosen to prove her discrimination claims against

---

[1] Although Ms. McNeil asserts parallel claims under both Title VII and Section 1981, they will
not be considered separately because such claims rise and fall together in the Tenth Circuit.  See
Skinner v. Total Petroleum, Inc. 859 F.2d 1439, 1444 (10th Cir. 1988) (per curiam).

Wells Fargo under the "mixed-motive" framework. <u>See</u> Response at 17.  Honoring that choice, the Court now assesses Ms. McNeil's allegations under that framework alone.[2]  <u>See</u> <u>Twigg v. Hawker Beechcraft Corp.</u>, 659 F.3d 987, 999 (10th Cir. 2011); <u>Brantley v. Unified Sch. Dist. No. 500</u>, 405 Fed. Appx. 327, 331 (10th Cir. 2010).

"A mixed-motive case is not established, and the <u>Price Waterhouse</u> framework does not apply, until the plaintiff presents evidence that directly shows that [race] played a motivating part in the employment decision at issue." <u>Fye</u>, 516 F.3d at 1226.  While many courts have improperly interpreted this standard as requiring plaintiffs to carry their burden by submitting "direct evidence" of discrimination, <u>see</u> <u>Twigg</u>, 659 F.3d at 1000 n. 8 (recognizing the widespread confusion), the Tenth Circuit has made clear that "a plaintiff can establish [discrimination] 'directly' under <u>Price Waterhouse</u>, through the use of <u>direct or circumstantial</u> evidence." <u>See</u> <u>Fye</u>, 516 F.3d at 1226 (emphasis added).  When a plaintiff seeks to use circumstantial evidence to carry her burden, however, "that circumstantial evidence must be tied 'directly' to the [discriminatory] motive." <u>Id.</u>  That is, a plaintiff must present either "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged [discriminatory] attitude" or "circumstantial evidence arising from the sequence of events . . . demonstrat[ing] that [race] was a substantial motivation in the challenged decision. <u>See</u> <u>Kenworthy v. Conoco, Inc.</u>, 979 F.2d 1462, 1471 n. 5 (10th Cir. 1992).

---

[2] Wells Fargo contends that Ms. McNeil's discrimination claims should instead be assessed under the <u>McDonnell Douglas</u> framework, <u>see</u> Motion at 11, but <u>Twigg</u> and <u>Brantley</u> make clear that the plaintiff's decision to proceed under one framework over another is controlling.  It should be pointed out, moreover, that under well-established Tenth Circuit precedent, Ms. McNeil will be held to that decision in the event of an appeal.  <u>See, e.g.</u>, <u>Richison v. Ernest Grp., Inc.</u>, 634 F.3d 1123, 1127 (10th Cir. 2011) ("If the theory was intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it.").

In her Response to Wells Fargo's motion for summary judgment, Ms. McNeil contends that she has submitted "substantial direct and circumstantial evidence of race/color based discrimination as set forth in her affidavit (Exh. 1), and in her discovery responses (Exh. R)." Response at 17.   According to Ms. McNeil, "[t]he direct and circumstantial evidence of discrimination includes terminating her contrary to her good performance evaluation and pay raise, being given unfavorable assignments, and numerous other ways that she was treated differently than Hispanic employees."[3] Response at 17-18.   Without more, however, Ms. McNeil's Response was "inadequate" "to meet [her] burden of presenting specific facts, by reference to specific exhibits in the record, to overcome the motion for summary judgment."  See Mitchell v. City of Moore, Oklahoma, 218 F.3d 1190, 1198-99 (10th Cir. 2000).   Despite making general references to her affidavit and discovery responses (a combined 61 pages of documents), Ms. McNeil altogether fails to point this Court to specific facts in those documents—or anywhere else—from which a rational trier of fact could find in her favor.   Although she alleges discriminatory treatment, she neither supports those allegations with citations to the record nor offers any further explanation of her allegations.   She does not explain, for example, what unfavorable assignments she was given or how she was treated differently than Hispanic employees.   Nor does she offer any analysis or legal authority explaining how these facts, if proved, would demonstrate that her race played a part in Wells Fargo's decision to terminate her

---

[3] Ms. McNeil is incorrect to characterize any of this evidence as "direct evidence," see Twigg, 659 F.3d at n. 8; indeed, "[b]ecause such [evidence] require[s] the trier of fact to infer that discrimination was a motivating cause of an employment decision, [it is] at most circumstantial evidence of discriminatory intent."  E.E.O.C. v. Wiltel, Inc., 81 F.3d 1508, 1514 (10th Cir. 1996).  In any event, however, it is not Ms. McNeil's mischaracterization of her evidence that dooms her claims; it is her failure to submit any type of evidence from which this court can conclude that race played a part in Wells Fargo's decision to terminate her employment.

employment.  Cf. United States v. Banks, 451 F.3d 721, 728 (10th Cir. 2006) (declining to address argument unsupported by legal authority).

This Court is "not obligated to comb the record in order to make [Ms. McNeil]'s arguments for [her]."  Mitchell, 218 F.3d at 1199; accord Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995).  In any event, moreover, while certainly more complete than the claims advanced in her argument section, the allegations contained in Ms. McNeil's statement of facts are nonetheless insufficient to overcome summary judgment.  Take, for example, her aforementioned assertion that she was disciplined for conduct for which Hispanic employees were not disciplined.  Response at 10.  Although evidence showing that an employer treated the plaintiff differently from similarly-situated employees who violated rules of comparable seriousness is often used to show pretext, see, e.g., Kendrick v. Penske Transp. Servs, Inc., 220 F.3d 1220, 1230 (10th Cir. 2000), this Court has serious concerns that such evidence could ever directly show that race played a motivating part in an individual employment decision.  See generally Twigg, 659 F.3d at 1000-03 (holding that although false justification, temporal proximity, inconsistent explanation, and deviation from customary practice evidence may be used to establish pretext, such evidence "do[es] not directly demonstrate an employer's retaliatory motive" under a "mixed motives" analysis).  But even if it could, Ms. McNeil's allegations are far too conclusory to establish that she was treated differently than a "similarly-situated" employee who did not share one or more of her protected characteristics and who "deal[t] with the same supervisor, [was] subjected to the same standards governing performance evaluation and discipline, and [who had] engaged in conduct of 'comparable seriousness.'"  See E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 801 (10th Cir. 2007).  Indeed, despite arguing that she

9

"was counseled for conduct that she is <u>convinced</u> Hispanic employees were not counseled for," Ms. McNeil acknowledges that she "<u>is not</u> familiar with all of the facts and circumstances surrounding the warnings issued to Hispanic tellers." Response at 10-11 (emphases added).[4]

"For dispositive issues on which the nonmovant will bear the burden of proof at trial, [she] must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [her] case in order to survive summary judgment." <u>Cardoso v. Calbone</u>, 490 F.3d 1194, 1197 (10th Cir. 2007). Having failed to present specific evidence that directly shows that race played a motivating part in Wells Fargo's decision to terminate her employment, Ms. McNeil has not met that burden here, and Wells Fargo is entitled to summary judgment on Ms. McNeil's race-based discrimination claims.

_____

[4] Ms. McNeil's other "evidence of discrimination"—that she was terminated despite receiving a pay raise, <u>see</u> Response at17-18—is similarly insufficient to withstand summary judgment. Although Ms. McNeil appears to be arguing that discrimination can be inferred from the fact that Wells Fargo allegedly offered a false reason for terminating her employment (her failure to comply with the Loss Policy Guidelines), <u>Twigg</u> makes clear that although "evidence of the falsity of an employer's legitimate, nonretaliatory reason for its action may help a plaintiff prove retaliation <u>indirectly</u>, . . . such evidence does not <u>directly</u> establish that an employer was motivated by retaliatory animus." <u>See</u> 659 F.3d at 1001 (emphasis in original). Even if proved, in other words, such a showing would be insufficient to carry Ms. McNeil's summary judgment burden under the "mixed motives" framework.

Like in <u>Twigg</u>, moreover, Ms. McNeil "does not attempt to explain how the evidence that she relies on even shows that [Wells Fargo]'s reason for terminating her was false." <u>Id.</u> While Ms. McNeil seems to be suggesting that it would have been illogical for Wells Fargo to give a pay raise to an employee who had repeatedly failed to comply with its Loss Policy Guidelines— and therefore that the termination decision (and not the pay raise) must have been ill supported— she never refutes Wells Fargo's contention that a decision to terminate an employee for her failure to comply with the Guidelines is made independently of, and without giving consideration to, the separate decision to give that employee a pay raise. <u>See</u> Reply at 3. If the two events are not mutually exclusive, however, the existence of the pay raise does not address Wells Fargo's reason(s) for terminating Ms. McNeil's employment. Like her disparate treatment claim, then, Ms. McNeil's "false reason" evidence is both legally and factually insufficient to avoid summary judgment.

  b. <u>Race-based Retaliation</u>

  Ms. McNeil also alleges that she was retaliated against for engaging in protected

opposition to the race-based discrimination that she had allegedly suffered. <u>See</u> Response at 19.

While a retaliation allegation creates a cause of action that is distinct from the underlying

discrimination claim, courts analyze the two sets of claims under the same analytical framework.

<u>See, e.g.</u>, <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1192 (10th Cir. 2012). Although Ms.

McNeil must establish that retaliation, as opposed to discrimination, played a part in Wells

Fargo's decision to terminate her employment, she again has the option of proving her

retaliations claims under either the "mixed motives" framework or the <u>McDonnell Douglas</u>

burden-shifting framework. <u>See</u> <u>id</u>. Despite arguing that her <u>discrimination</u> claims should be

assessed under the "mixed motives" framework, <u>see</u> Response at 17, it appears that Ms. McNeil

is proceeding with her <u>retaliation</u> claims under the <u>McDonnell Douglas</u> framework instead. <u>See</u>

Response at 19 (citing <u>Conroy v. Vilsack</u>, 707 F.3d 1163, 1181 (10th Cir. 2013), a <u>McDonnell</u>

<u>Douglas</u> case, for the elements that she must prove in order to make out a prima facie case of

retaliation; elements that are <u>not</u> required under the "mixed motives" framework). Honoring that

choice once again, the Court now analyzes Ms. McNeil's retaliation claim under the <u>McDonnell</u>

<u>Douglas</u> framework alone. <u>See</u> <u>supra</u> note 2 and accompanying text.[5]

---

[5] While Ms. McNeil's oscillating between the frameworks may seem odd, it is probably a
strategic decision based on the type of evidence that Ms. McNeil possesses with respect to her
individual claims. Indeed, based on the retaliation evidence that Ms. McNeil has submitted in
her Response, she has no choice but to rely on the <u>McDonnell Douglas</u> burden-shifting
framework to prove her retaliation claims. <u>See</u> <u>Trujillo-Cummings v. Pub. Serv. Co. of N.M.</u>,
173 F.3d 864, *5 (10th Cir. 1999) (unpublished) ("Because she presents no 'evidence of conduct
or statement by persons involved in the decisionmaking process that may be viewed as directly
reflecting the alleged [retaliatory] attitude,' her claim cannot survive summary judgment on a

McDonnell Douglas and its progeny apply a three-step, burden-shifting framework to retaliation claims. See Fye v. Oklahoma Corp. Com'n, 516 F.3d 1217, 1227.  The plaintiff "must first establish a prima facie case of retaliation by showing '(1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.'" Id.  "If [the plaintiff] makes the prima facie showing, the [employer] must proffer a legitimate, nondiscriminatory reason for her termination." Id.  The plaintiff "then has the burden of demonstrating that the [employer]'s asserted reasons for her termination are pretextual." Id. Importantly, even at the summary judgment stage, a plaintiff's "[f]ailure to come forward with evidence of pretext will entitle the defendant to judgment." Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 530 (10th Cir. 1994).  Thus, although Wells Fargo raises some compelling concerns about Ms. McNeil's ability to establish a prima facie case of retaliation—including that she has failed "to establish that she complained of race or color discrimination during her employment," see Motion at 17, and that even if she could, "there is no evidence 'that anyone in the decision making process even knew of her protected opposition,'" see id. at 18—it is unnecessary to determine whether Ms. McNeil has in fact established a prima facie case of retaliation because it is plain that she has failed to carry her ultimate burden of demonstrating that Wells Fargo's proffered reasons for terminating her employment were pretextual.  See generally Jones v. Denver Post Corp, 203 F.3d 748, 753-54 (10th Cir. 2000) (affirming grant of summary in favor of defendant, without deciding whether plaintiff established a prima facie case, where plaintiff had not established a genuine issue of material fact regarding pretext).

mixed motive theory." (alteration in original) (quoting Thomas v. Denny's, Inc., 111 F.3d 1506, 1512 (10th Cir.1997))).

Wells Fargo contends that it terminated Ms. McNeil's employment because her "cash shortages and out-of-balance percentages all exceeded the uniform guidelines' tolerable level of errors for several months."  Motion at 13.  It further contends, moreover, that it was only "[a]fter providing her with an informal warning, an informal warning addendum, and formal warning, [that] Wells Fargo legitimately terminated [Ms. McNeil]'s employment for [these] cash shortages and out-of-balance conditions."  Id. at 13-14.  This was sufficient to shift the burden back to Ms. McNeil to show there was a genuine issue of material fact as to whether Wells Fargo's proffered reason was pretextual.  See Jones, 203 F.3d at 756 ("By documenting a pattern of performance problems, the Post has met its burden at this stage of the McDonnell Douglas analysis.").  In her Response, however, Ms. McNeil neither challenges the fact that Wells Fargo provided a facially non-retaliatory reason for firing her, nor presents evidence that Wells Fargo's justification was pretextual or unworthy of belief.  See generally Response at 19-20.  Indeed, as Wells Fargo correctly points out, Ms. McNeil's "Response does not make any claim that Wells Fargo's legitimate, non-discriminatory reason for her discharge (her cash balancing errors) was a pretext for retaliation."  Reply at 8 (emphasis in original).  It merely stops after purporting to establish a prima facie case of retaliation.  See Response at 19-20.

Ms. McNeil's failure to argue a required element of her claim necessitates that this Court grant summary judgment to Wells Fargo on Ms. McNeil's race-based retaliation claim.  See Cone, 14 F.3d at 530 ("Failure to come forward with evidence of pretext will entitle the defendant to judgment."); accord Koch v. Koch Indus., Inc., 202 F.3d 1202, 1212 (10th Cir. 2000) ("[F]ailure of proof of an essential element renders all other facts immaterial.").

**II.   Wells Fargo is entitled to Summary Judgment on Ms. McNeil's disability-based discrimination and retaliations claims**

In her second set of claims, Ms. McNeil alleges that Wells Fargo discriminated and retaliated against her because of her disability, in violation of the Americans with Disabilities Act ("ADA").  Response at 18-19.  While Ms. McNeil's Response does not fully articulate the bases for these claims, her complaint asserts that her ADA claims are based on Wells Fargo's "refusing to provide reasonable accommodation for [her], and retaliating against her for seeking reasonable accommodation." Complaint (Doc. 1-2) at 7.  Drawing all reasonable inferences in Ms. McNeil's favor, therefore, the Court construes her allegations as asserting both a "failure to accommodate" claim and an "accommodation retaliation" claim.  While both claims are legally cognizable under the ADA, see, e.g., Selenke v. Med. Imaging of Colo., 248 F.3d 1249 (10th. Cir. 2001), Ms. McNeil has failed to "designate specific facts so as to make a showing sufficient to establish the existence of [the] element[s] essential to [her] case in order to survive summary judgment."  Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007) (alterations and internal quotation marks omitted).  For the reasons that follow, therefore, the Court grants summary judgment to Wells Fargo on each of Ms. McNeil's disability-based claims.

      a.   Disability-based Discrimination

Because the ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," 42 U.S.C. § 12112(b)(5)(A), the statute "establishes a cause of action for disabled employees whose employers fail to reasonably accommodate them."  Selenke v. Med. Imaging of Colorado, 248 F.3d 1249, 1261 (10th Cir. 2001).  When a defendant seeks summary judgment with respect to a plaintiff's "failure to accommodate" claim under the ADA, the Tenth Circuit assesses that claim under the familiar

14

McDonnell Douglas burden-shifting framework discussed above.  See Smith v. Midland Brake, Inc., a Div. of Echlin, Inc., 180 F.3d 1154, 1178 (10th Cir. 1999) (en banc).  Under that framework, "the employee initially bears the burden of production with respect to a prima facie case" of failure to accommodate.  Id.  If the employee "produces evidence sufficient to make a facial showing on his or her prima facie case, the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense."  Id.  "If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitating any challenged elements of his or her prima facie case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements."  Id.

Though there appears to be some minor disagreement in the Tenth Circuit over what exactly a plaintiff needs to show in order to establish a prima facie case of failure to accommodate,[6] it is clear that a failure to accommodate claim must fail unless the plaintiff can

---

[6] Compare, e.g., Allen v. SouthCrest Hosp., 455 Fed. Appx. 827, 834 (10th Cir. 2011) (unpublished) ("In order to establish a prima facie case of failure to accommodate in accordance with the ADA, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability."), with Bartee v. Michelin N. Am., Inc., 374 F.3d 906, 912 n. 4 (10th Cir. 2004) (requiring plaintiff asserting failure to accommodate claim to show: "(1) he is disabled within the meaning of the ADA; (2) he can perform, either with or without reasonable accommodation, the essential functions of the desired job; and (3) . . . that an employer [did not] take reasonable steps to reassign a qualified individual to a vacant position or a position the employer reasonably anticipates will become vacant in the fairly immediate future"), and Spielman v. Blue Cross & Blue Shield of Kan., Inc., 33 Fed. Appx. 439, 443 (10th Cir. 2002) (unpublished) ("In order to establish a prima facie case of failure to accommodate under the ADA, a plaintiff must prove '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with

first establish "that she was a disabled person within the meaning of the ADA."  Allen v.

SouthCrest Hosp., 455 Fed. Appx. 827, 830 (10th Cir. 2011) (unpublished); accord supra note

6.[7]  "To satisfy the ADA's definition of disability, a plaintiff must (1) have a recognized

impairment, (2) identify one or more appropriate major life activities, and (3) show the

impairment substantially limits one or more of those activities."  Berry v. T-Mobile USA, Inc.,

490 F.3d 1211, 1216 (10th Cir. 2007).[8]  Although Wells Fargo contends that Ms. McNeil cannot

satisfy either of the first two definitional elements, see Motion at 20, the Court disagrees.  As

defined by the EEOC regulations, a "physical impairment" is "[a]ny physiological disorder or

condition . . . or anatomical loss affecting one or more body systems, such as . . .

musculoskeletal," 29 C.F.R. § 1630.2(h)(1), and a "major life activit[y]" is defined to include

"standing," 29 C.F.R. § 1630.2(i)(1)(i).  Taken together, these regulations make clear that Ms.

McNeil's knee injury, which prevented her from standing for more than one hour at a time, see

Response at 18, is sufficient to satisfy the first two prongs of the disability determination.  See

McCleary v. Nat'l Cold Storage, Inc., 67 F. Supp. 2d 1288, 1297-99 (D. Kan. 1999).  Even so,

however, Ms. McNeil cannot establish that she was entitled to the ADA's protections unless she

can "t[ie] the two statutory phrases together" by showing that her knee injury "substantially

_____

reasonable accommodation he could perform the essential functions of the position ....; and (4)
that the [employer] refused to make such accommodations.'").
[7] Because Ms. McNeil cannot establish that she was a qualified individual with a disability under
the Act, this Court need not determine either what other elements must be satisfied in order to
make out a prima facie case of failure to accommodate, or whether Ms. McNeil has in fact
satisfied those elements here.
[8] While the ADA also extends its protections to those individuals who have a "disability" by
virtue of the fact that they have "a record of such impairment" or are "regarded as having such an
impairment," see Johnson v. Weld Cnty., Colo., 594 F.3d 1202, 1218 (10th Cir. 2010), these
alternative forms of disability are not at issue in this case.

limited" her ability to stand.  See Poindexter v. Atchison, Topeka and Santa Fe Ry. Co., 168 F.3d 1228, 1230 (10th Cir. 1999) (internal citation omitted).

Since Ms. McNeil does not contend that her knee injury completely precluded her from standing, see Response at 18, it is incumbent on her to establish instead that she is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." See Doyal v. Okla. Heart, Inc., 213 F.3d 492, 496 (10th Cir. 2000) (emphasis added) (quoting 29 C.F.R. § 1630(j)(1)).  "As this definition suggests, it is not sufficient for a plaintiff to identify an impairment and leave the court to infer that it results in substantial limitations to a major life activity."  Sanchez v. Vilsack, 695 F.3d 1174, 1178 (10th Cir. 2012).  But as Wells Fargo correctly points out, neither Ms. McNeil's Response nor underlying Complaint contains any basis for determining whether Ms. McNeil was "substantially limited" compared to the average person; indeed, Ms. McNeil's Response actually concedes that "Ms. McNeil had difficulty explaining the ways in which she was limited in comparison to the average person."  Response at 3; see id. ("She did not feel qualified, and still does not feel qualified to provide such a description.").  These qualms notwithstanding, it was nonetheless Ms. McNeil's burden to present evidence showing that her knee injury substantially limited her ability to stand compared to an average person in the general population, see Doyal, 213 F.3d at 496, and her failure to do so prevents Ms. McNeil from establishing, and this Court from holding, that she was disabled within the meaning of the ADA.  See, e.g., Johnson v. Weld Cnty., 594 F.3d 1202, 1218 & n. 10 (10th Cir. 2010) (allegation of disability that included no basis for comparison with average

17

person was insufficient to carry plaintiff's burden); Lusk v. Ryder Integrated Logistics, 238 F.3d 1237, 1241 (10th Cir. 2001) (same).[9]

Because she has not demonstrated that she was disabled within the meaning of the ADA, Ms. McNeil has failed to establish a prima facie case, and Wells Fargo is therefore entitled to summary judgment on Ms. McNeil's failure to accommodate claim.  See Smith, 180 F.3d at 1178.

      b.  Disability-based Retaliation

---

[9] Although the Tenth Circuit has held "that comparative evidence is not required as a matter of law to withstand a motion for summary judgment where the impairment appears substantially limiting on its face," see Lusk, 238 F.3d at 1240 (emphasis added) (citing Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174 (10th Cir. 1996)), that exception to the general rule, see Lusk, 238 F.3d at 1241, is not applicable here.

    Unlike the permanent fifteen pound lifting restriction that the Tenth Circuit held was substantially limiting on its face in Lusk, this Court is unwilling to conclude that a one hour standing restriction (without regard to either its duration or long-term impact, see Doyal, 213 F.3d at 496) appears substantially limiting on its face.  A number of courts, including the Third and Tenth Circuits, have held that standing restrictions similar to Ms. McNeil's are not substantially limiting on their face.  See, e.g., Wehrley v. Am. Family Mut. Ins. Co., 513 Fed. Appx. 733, 738-40 (10th Cir. 2013) (unpublished) (Knee injury that prevented plaintiff from "sitting or standing for more than thirty minutes at a time" was not a substantial limitation that entitled plaintiff to ADA protections); Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 186 (3d Cir. 1999) (Ankle injury that "require[d] ten-minute hourly breaks when standing or walking" was not a substantial limitation); Prickett v. Amoco Oil Co., 147 F. Supp. 2d 1147, 1154 (D. Utah 2001) (Back injury that prevented plaintiff "from engaging in uninterrupted standing or sitting for more than about an hour" was not a substantial limitation); McCleary v. Nat'l Cold Storage, Inc., 67 F. Supp. 2d 1288, 1301 (D. Kan. 1999) (Foot injury that prevented plaintiff from engaging in "excessive [or "prolonged"] standing or walking" was not a substantial limitation); Brower v. Continental Airlines, Inc., 62 F. Supp. 2d 896, 905 (E.D.N.Y. 1999) (Foot condition that prevented plaintiff from "extended walking or standing" was not a substantial limitation); Miller v. Airborne Exp., No. 3:98-cv-0217, 1999 WL 47242, *5 (N.D. Tex. 1999) (unreported) (Permanent knee injury that prevented plaintiff from "standing for more than thirty minutes" without a rest was not a substantial limitation).  Ms. McNeil makes no attempt to distinguish these cases, and her failure to document, among others things, either the duration or the long-term impact of her impairment prevents this Court from distinguishing the cases for her.

Ms. McNeil's second ADA claim alleges that Wells Fargo also "retaliated against her for requesting accommodation [for her knee injury]."  Response at 19.  That, however, is <u>all</u> Ms. McNeil says about the disability-based retaliation that she was allegedly subjected to for requesting accommodations from Wells Fargo.  She does not explain, let alone point this Court to specific evidence showing, what was done to her, who did it to her, or when and where it allegedly occurred.  She offers no legal authority in support of her allegation, and she fails to respond to Wells Fargo's argument that she has not submitted enough evidence to make out a prima facie case of retaliation.  For all intents and purposes, then, Ms. McNeil has effectively waived her disability-based retaliation claim.  She maintains the allegation in name only, but "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." <u>Self v. Crum</u>, 439 F.3d 1227, 1230 (10th Cir. 2006).  Indeed, "[t]o defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." <u>Id.</u>  Ms. McNeil's one-sentence, conclusory allegation does not meet this standard.  Wells Fargo is entitled to summary judgment on Ms. McNeil's disability-based retaliation claim.

## CONCLUSION

Viewing the facts and inferences in the light most favorable to Ms. McNeil, the Court has determined that there is no genuine dispute of material fact that would preclude summary judgment for Wells Fargo on any of Ms. McNeil's claims.  The Court, therefore, GRANTS summary judgment to Wells Fargo on all of Ms. McNeil's claims.[10]

---

[10] Ms. McNeil's other claims, including her spoliation allegation, have no merit and warrant no further discussion.

19

IT IS THEREFORE ORDERED THAT:


1.   Defendant's Motion for Summary Judgment (Doc. 26) is GRANTED in full.


As this Order ends the litigation in this proceeding, the Court directs the Clerk to enter judgment

accordingly.

Dated this _____11_____ day of _____December_____, 2013.


BY THE COURT:


 *s/ David M. Ebel*_____
U. S. CIRCUIT COURT JUDGE